# In the United States Court of Federal Claims

No. 24-1981
Filed: February 11, 2025
NOT FOR PUBLICATION

**ALFONSO F. MARSHALL,**

   *Plaintiff*,

v.

**UNITED STATES,**

   *Defendant*.

*Alfonso F. Marshall*, *pro se*, for the plaintiff.

*Joshua W. Moore*, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C.

## MEMORANDUM OPINION AND ORDER

### *HERTLING*, Judge

  The plaintiff, Alfonso F. Marshall, proceeding *pro se*, brought this action on November 25, 2024, on behalf of his ancestor, Mary Polly. The complaint alleges that the United States violated an implied contract with Mary Polly based on various constitutional clauses and the Fugitive Slave Act of 1793. Based on this supposed contract, the plaintiff seeks anticipatory remigration recompense in the amount of $2,370,000.

  The complaint alleges that the United States Government, by kidnapping his ancestors and subjecting them to cruelty and forced labor, violated a contract with Mary Polly. (Compl. at 4.) The existence of a contract with the United States relies on Article I, Section 9 Clause 1 (allowing the importation of slaves until 1808); Article IV Section 2 Clause 3 (fugitive slave clause); Article V of the Constitution (process for amending the Constitution); and the Fugitive Slave Act of 1793.

  The defendant has moved to dismiss. The defendant argues that the plaintiff's claim on behalf of Mary Polly must be dismissed because the constitutional clauses and Fugitive Slave Act on which the claim relies do not create a contract and are not money-mandating. Moreover, the defendant alleges that the claim is untimely.

In response to the motion to dismiss, the plaintiff cites as additional authority to support his claim Article I, Section 8, Clause 4, the Declaration of Independence, President Washington's First Inaugural Address, and the Federalist Papers.

Although the complaint speaks to real harms suffered by the plaintiff's ancestors, it fails to identify a non-frivolous legal basis for Tucker Act jurisdiction over the plaintiff's claim. The complaint also fails to demonstrate plausibly the existence of a contract with the United States. Finally, the plaintiff's claim is barred by the six-year statute of limitations set out in 28 U.S.C. § 2501. Accordingly, the complaint is dismissed for lack of jurisdiction pursuant to Rules 12(b)(1), 12(b)(6), and (h)(3) of the Rules of the Court of Federal Claims ("RCFC").

The jurisdiction of the Court of Federal Claims is defined by the Tucker Act, 28 U.S.C. § 1491(a). Under the Tucker Act, the court may entertain "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." The Tucker Act is a jurisdictional statute but "does not create any substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398 (1976). Therefore, a plaintiff must also be able to "identify a substantive right for money damages against the United States separate from the Tucker Act itself" before the court can address the merits of a claim. *Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004); *see Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (*en banc* in relevant part).

Jurisdiction is a threshold matter that a court must resolve before it addresses the merits of a case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998). A court has a responsibility to ensure that it has jurisdiction over any claims asserted. *See, e.g., St. Bernard Parish Gov't v. United States*, 916 F.3d 987, 992-93 (Fed. Cir. 2019).

The plaintiff is proceeding *pro se*. As a result, his pleadings are entitled to a more liberal construction than they would be given if prepared by a lawyer. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Giving a *pro se* litigant's pleadings a liberal construction, however, does not divest the *pro se* plaintiff of the responsibility of demonstrating that the complaint satisfies the jurisdictional requirements that limit the types of claims the Court of Federal Claims may entertain. *See Kelley v. Sec'y, U.S. Dep't of Labor*, 812 F.2d 1378, 1380 (Fed. Cir. 1987).

The defendant has moved to dismiss the complaint pursuant to RCFC 12(b)(1). In resolving a motion to dismiss for lack of jurisdiction, a "court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011). It is the plaintiff's burden to establish by a preponderance of the evidence that subject-matter jurisdiction exists. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).

Under RCFC 12(b)(6), dismissal for failure to state a claim upon which relief can be granted "is appropriate when the facts asserted by the claimant do not entitle [the claimant] to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). A court must

both accept as true a complaint's well-pleaded factual allegations, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), and draw all reasonable inferences in favor of the non-moving party. *Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed. Cir. 2001). To avoid dismissal, a complaint must allege facts "plausibly suggesting (not merely consistent with)" a showing that the plaintiffs are entitled to the relief sought. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

The plaintiff's claim is beyond the jurisdiction of the court because none of the sources of law on which the claim relies can be construed as mandating the payment of money. To begin, the Constitution generally does not create an express or implied contract between the people and the federal government. *Taylor v. United States*, 113 Fed. Cl. 171, 173 (2013).

Moving to the specific clauses and other putative sources of law on which the complaint and the plaintiff's opposition to the motion to dismiss rely, Article I Section 9 Clause 1 prevented the federal government from banning the importation of slave until 1808. The provision is silent as to requiring the payment of damages for its violation. Article I Section 8 Clause 4 grants to the Congress the power to establish uniform naturalization and bankruptcy laws throughout the nation. This provision is also silent on payment of money damages for its violation. Article IV Section 2 Clause 3 of the Constitution limited the power of non-slave states in the treatment of slaves who succeeded in fleeing from their bondage; it too is silent on the payment of money damages for any violation. Article V of the Constitution sets out the process for amending that document. It too contains no provision for the payment of damages.

As for the other sources of law cited by the plaintiff, the Fugitive Slave Act of 1793, 1 Stat. 302, was the legislative enactment to implement the Fugitive Slave Clause of the Constitution. Nothing in the law can be construed as mandating the payment of money. Additionally, the Declaration of Independence, Washington's First Inaugural Address, and the Federalist Papers are not sources of law, much less money-mandating ones. *See Gaddis v. United States*, No. 24-476, 2024 WL 3358160 at *1, *7 (Fed. Cl. July 10, 2024) (finding that the Declaration of Independence is not a money-mandating source of law); *McCreary County v. ACLU*, 545 U.S. 844, n.6 (2005) (stating that inaugural addresses reflect the views of the speaker, not actionable government policies); *Dames & Moore v. Regan*, 453 U.S. 654, 659 (1981) (noting that the Federalist Papers are commentary on the Constitution, not legal authority). Because these documents are not sources of law, they thereby cannot create grounds for a legal claim, let alone a money-mandating legal claim.

A money-mandating claim must be based on a source of law that mandates "'compensation by the Federal Government for the damage sustained.'" *Richardson v. United States*, 170 Fed. Cl. 598, 600-01 (2024) (quoting *Szuggar v. United States*, 145 Fed. Cl. 331, 335 (2019)); *United States v. Mitchell*, 463 U.S. 206, 217 (1983)). The central question is "whether the constitutional clause or the legislation which the claimant cites can be fairly interpreted as mandating compensation by the Federal Government for the damage sustained. If not, this court cannot give relief. . . ." *Eastport S.S. Corp. v. United States,* 372 F.2d 1002, 1009 (Ct. Cl. 1967). None of the sources of law recited in the complaint can fairly be interpreted as mandating money

by the federal government. Accordingly, to the extent the plaintiff's claim is based on these sources of law, it must be dismissed for lack of jurisdiction.[1]

The plaintiff also seeks to bring a claim under an implied contract. The existence of a contract is a question of law. *Cal. Fed. Bank v. United States*, 245 F.3d 1342, 1346 (Fed. Cir. 2001). A complaint must "allege facts establishing the existence of a contract with the government." *Am. Bankers Ass'n v. United States*, 932 F.3d 1375, 1381 (Fed. Cir. 2019). To establish the existence of a contract with the federal government, the plaintiff must allege facts sufficient to demonstrate: (1) a mutual intent of the parties to contract; (2) an unambiguous offer and acceptance; (3) consideration; and (4) "actual authority" by the government representative "to bind the [g]overnment" in contract. *Id.*

To survive a motion to dismiss for failure to state a claim, the complaint must plausibly allege the existence of a contract. The complaint alleges that "the Framers of the Constitution established a Written Binding Contract with the plaintiff's Ancestors, and now said Non-Agreed-Upon Contract is void." (Compl. at 2 (internal quotations and emphasis removed).)

The complaint does not plausibly allege the existence of a contract. First, the constitutional and statutory provisions cited by the complaint do not on their face reflect an intent to be bound by contract. Thus, the complaint must establish the mutual intent of the parties to contract. The complaint asserts the existence of a contract between his ancestor, Mary Polly, and the United States but acknowledges that Mary Polly did not intend to enter a contract with the defendant. (Compl. at 2-3 ("The Contract for Such Persons was written by General George Washington and the Framers in the 18th Century - no input was sought from Such Persons, and their decision directly harmed the co-plaintiff's entire life and, subsequently, her direct descendants. Plaintiff(s) did not accept nor agree to the Terms of the Contract." (cleaned up)).) Based on this same language, the complaint also reflects that there was no unambiguous offer and acceptance by the plaintiff, Mary Polly, or any other enslaved ancestor of the plaintiff. (Compl. at 2-3.) Likewise, no consideration is alleged.

The elements to allege and establish the existence of a contract apply equally to a claim alleging the existence of an implied-in-fact contract. *Hometown Fin., Inc. v. United States*, 409 F.3d 1360, 1364 (Fed. Cir. 2005); *Hanlin v. United States*, 316 F.3d 1325, 1328 (Fed. Cir. 2003). In an implied-in-fact contract, a "meeting of minds . . . 'is inferred, as a fact, from the conduct of the parties'" and the surrounding circumstances. *Hanlin*, 316 F.3d at 1328 (quoting *Balt. & Ohio R.R. v. U.S.*, 261 U.S. 592, 597, 43 S.Ct. 425, 67 L.Ed. 816 (1923)). Just as the complaint fails to allege the elements necessary to support the existence of an express contract between the

---

[1] In effect, the plaintiff appears to be bringing a claim for compensation for the enslavement of his ancestor(s), but the Court of Federal Claims does not have jurisdiction over a claim for reparations or compensation for enslavement. *See Jarvis v. United States*, 154 Fed. Cl. 712, 719–20 (2021), *aff'd*, No. 2022-1006, 2022 WL 1009728 (Fed. Cir. Apr. 5, 2022).

plaintiff (and his ancestor(s)) and defendant, it fails to allege the necessary elements of an implied contract.[2]

Finally, the plaintiff's claim is time-barred.  Under 28 U.S.C. § 2501, the Court of Federal Claims does not have jurisdiction over any claim filed later than six years after the claim accrues.  *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130 (2008).  An exception exists for "[a] petition on the claim of a person under legal disability or beyond the seas at the time the claim accrues [, which] may be filed within three years after the disability ceases."  28 U.S.C. § 2501.  Even a valid claim must be dismissed if it is not timely.  *Chisolm v. United States*, 82 Fed. Cl. 185, 192, *aff'd*, 298 F. App'x 957 (Fed. Cir. 2008).

It is not clear on what basis the plaintiff purports to bring a claim on behalf of Mary Polly, his long-deceased ancestor.  A plaintiff may not normally assert a claim on behalf of another person unless legally authorized to act on that person's behalf.  The plaintiff makes no such showing.

Setting that problem aside, the claim for compensation for Mary Polly is too late.  Even if Mary Polly were alive when the legal disability imposed by slavery ended in 1865, the complaint is filed long after the six-year statute of limitations has passed.  It is that same enslavement of his ancestors, ended by 1865, on which the plaintiff otherwise bases his claim., is hundreds of years beyond the statute of limitations.  Moreover, the statute of limitations for claims brought in this court is established by statute, not the "historical time continuum" proposed in the complaint.  (Compl. at 4.)  The plaintiff does not address the statute of limitations in his response to the defendant's motion to dismiss.   The complaint must also be dismissed as untimely.

Because the complaint is untimely, transfer to a federal court that might be able to assert jurisdiction over aspects of the plaintiff's claim is not warranted.  *See* 28 U.S.C. § 1631.

---

[2] The complaint also appears to attempt to assert a claim under the Contract Disputes Act ("CDA").  Besides failing to allege compliance with the administrative requirements to support such a claim, the complaint does not plausibly allege the existence of a contract.  Therefore, its allegations cannot support a claim under the CDA.

The complaint is untimely and fails to cite a money-mandating source of law or to show the existence of a plausible contract. Accordingly, the defendant's motion to dismiss is **GRANTED**, and the plaintiff's complaint is **DISMISSED** without prejudice, in part, for lack of subject-matter jurisdiction, pursuant to RCFC 12(b)(1) and 12(h)(3), and **DISMISSED** with prejudice, in part, for failure to state a claim, pursuant to RCFC 12(b)(6). The Clerk is **DIRECTED** to enter judgment dismissing the complaint with prejudice. No costs are awarded.

It is so **ORDERED.**

s/ Richard A. Hertling
**Richard A. Hertling**
**Judge**